**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JERENIECE J. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:02-cv-1701-SEB-VSS |
| ) | |
| INDIANA CIVIL RIGHTS COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Motion for Summary Judgment**

As used in this Entry, "Jones" refers to the Plaintiff, Jereniece Jones, and "ICRC" refers to the defendant, the Indiana Civil Rights Commission. The ICRC seeks resolution of Jones' employment discrimination claim through the entry of summary judgment. Having considered the pleadings, the motion for summary judgment and Jones' response thereto, and being duly advised, the court finds that the motion for summary judgment must be **granted.** This conclusion rests on the following facts and circumstances:

1. Jones sues the ICRC for unlawfully discriminating against her on the basis of disability, a chemical sensitivity, in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

2. As noted, the ICRC seeks resolution of Jones' claim through the entry of summary judgment. "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

3. The ADA prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. § 12112(a). Under the ADA, there are two distinct categories of disability discrimination claims: failure to accommodate and disparate treatment. *See Sieberns v. Wal-Mart Stores, Inc.,* 125 F.3d 1019, 1021-22 (7th Cir. 1997). In a reasonable

accommodation case, like the present one, the plaintiff must first show that: 1) she was disabled; 2) her employer was aware of her disability; and 3) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. *McPhaul v. Bd. of Comm'rs of Madison County,* 226 F.3d 558, 563 (7th Cir. 2000).

4. Jones' "threshold burden" is to establish that she is disabled as that term is defined in the ADA. *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir. 1995). A disability, with respect to an individual, is defined within the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). In order to establish a disability under the ADA, Jones can show that either (1) she has a physical or mental impairment that substantially limits her in one or more major life activities; (2) she has a record of such an impairment; or (3) the employer regarded her as having such an impairment. 42 U.S.C. § 12102(2). If Jones cannot establish one of these categories, then Jones is not disabled under the ADA. *Nese v. Julian Nordic Const. Co.,* 405 F.3d 638, 641 (7th Cir. 2005).

5. "Merely having an 'impairment' does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002) (internal quotations added). "Substantially limits" has been suggested to mean "considerable" or to "a large degree." *Id.* at 196. "Major life activities" refers to those activities that are of central importance to daily life. *Id.* at 197. Although there is no exhaustive list of activities, the Supreme Court has cited to the Rehabilitation Act regulations, which define major life activities to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); *Williams,* 534 U.S. at 195. These terms must be interpreted strictly to create a demanding standard for qualifying as disabled. *Id.* The ADA requires the existence of a disability to be determined on a case-by-case manner. *Id.* at 198; 42 U.S.C. § 12101(2).

6. Jones is employed by the ICRC as a Civil Rights Specialist 6. As a part of her duties in that position, Jones is required to maintain and copy files that are stored within the office of the ICRC. In addition, Jones is responsible for preparing and sending various types of correspondence, including brochures and flyers created for the ICRC. She is also required to process files and papers in various ways, to serve as backup for all duties of the Civil Rights Technician 3 (in which role she is required to serve as front desk staff to greet the public and handle incoming telephone calls), and to communicate with complainants regarding information maintained in their case files.

7. The ICRC office is located within the Indiana Government Center North, in Indianapolis, Indiana. As part of its statutory mission, the ICRC is required to provide the public with information regarding various types of discrimination and avenues available for relief from discrimination. One means by which it does this is to make available brochures which convey this information. The ICRC utilizes the brochures on a daily basis. The brochures are mailed out on a daily or weekly basis to various individuals. In addition, for the benefit of the public and citizens visiting the ICRC offices, the ICRC maintains a display for individuals to pick up copies while in those offices. The brochures are kept in an

enclosed room within the ICRC office and in one separate storage area within the Indiana Government Center North. There is no other space within the custody and control of the ICRC that would facilitate mailings of the brochures as is customary on a daily basis.

      8.      Jones has a sensitivity to chemicals. These chemicals are found in brochures and in the perfumes sometimes worn by others, and when Jones is exposed to them she suffers nose bleeds, dizziness, restricted airways, difficulty breathing, swelling in fingers and abdominal cramps. Her condition also makes it difficult to hear at times, causes a sensitivity to light, difficulty walking, difficulty cleaning, and inhibits breathing and causes additional limitations when she is exposed to "harsh odors." These symptoms also make it difficult for Jones to perform manual tasks when suffering from an allergic or chemical reaction.

      9.      The ICRC has taken certain steps to mitigate Jones' symptoms or exposure to the chemicals at the workplace: it has adopted a chemical sensitivities policy; it has assigned Jones to an enclosed workspace; it has placed a HEPA filtration system in the file room where Jones' workspace is located; and Jones has been and in the future will be notified before the brochures are placed on the conference room table to avoid exposure. There are also steps the ICRC has not taken: it has not removed all colored brochures and flyers from its offices, such that those materials would have to be accessed from another location; it has not placed its employees in an area that had not been authorized by the Department of Administration as a work area; and it has not authorized Jones to work from her home.

      10.      For various reasons, Jones could not perform her duties with the ICRC from her home. The principal reason is that from her home she would not have sufficient or effective access to the papers and people needed to discharge her duties.

      11.      Breathing, without doubt, is a major life activity. Jones' breathing and some related functions are impacted by her exposure to environmental chemicals. The evidentiary record does indeed show, however, that Jones' symptoms are not ubiquitous, but are triggered only by proximity to certain features of her environment. Although the ICRC states that Jones' symptoms appear to be exhibited only in the workplace, they also appear to be subject to mitigation through measures such as the filtration system, such as the chemical sensitivities policy among her co-workers, and such as notifying Jones before brochures are to be placed in the conference room. These measures, together with the evident fact that Jones is not afflicted with the reaction to her chemical sensitivities at her home, show that in her situation, as was the case in *Gits v. Minnesota Min. and Mfg. Co.,* 2001 WL 1409961(D. Minn. June 15, 2001), her chemical sensitivities and her other impairments do not substantially limit her in one or more major life activities.[1]

---

[1]There is no question concerning the non-application of the other prongs of 42 U.S.C. § 12102(2), meaning that Jones does not have a record of such an impairment and the ICRC has not regarded Jones as having such an impairment. Only the first prong is implicated by the contentions in this case.

12. The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). From the foregoing, it is evident that Jones is not a "qualified individual with a disability." See 42 U.S.C. § 12111(8) (a qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). Even if the court concluded otherwise, however, her requested accommodations are not reasonable. First, she wishes to work from her home, but she could not meet the needs of the ICRC if she attempted to do so, and the administrative burden on the ICRC in attempting to accommodate such an arrangement would be unreasonable. *Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 544-45 (7th Cir. 1995) ("Most jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance. This will no doubt change as communications technology advances, but is the situation today. Generally, therefore, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home . . . ."); see also *Buckles v. First Data Resources, Inc.,* 176 F.3d 1098, 1101 (8th Cir. 1999). The same is true of attempting to remove brochures and flyers from the ICRC's office. "In this situation, there is only so much avoidance that can be done before an employer would essentially be providing a bubble for an employee to work in." *Id.* "An employer is not required by the ADA to create a wholly isolated work space for an employee that is free from" other co-workers. *Id.* (finding it an unreasonable accommodation to require employer to provide an isolated workplace free of irritants); *Gits,* 2001 WL 1409961, at *8 (finding it unreasonable to require employer to create an isolated workplace free of chemicals). The ADA does not mandate the creation of a co-worker free bubble for Jones. *Buckles,* 176 F.3d at 1101. Jones has failed to establish that she has a disability as defined in the ADA. Even if she is "disabled" within the meaning of the Act, however, the evidentiary record shows without question that she is not able to perform the essential requirements of her position with the ICRC "with or without reasonable accommodation."

13. Jones has not established the elements of a *prima facie* case. Accordingly, she cannot withstand the ICRC's motion for summary judgment. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993), *cert. denied,* 511 U.S. 1005 (1994). The motion is therefore granted, and judgment consistent with this Entry shall now issue. Any motion not specifically addressed in this Entry is denied as moot.

**IT IS SO ORDERED.**

Date: 03/17/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana